

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERAL TRADE COMMISSION,

       Plaintiff,

       v.

MERCOLA.COM, LLC, a limited liability
company,

MERCOLA.COM HEALTH RESOURCES, LLC,
a limited liability company, and

DR. JOSEPH MERCOLA, individually and as an
owner, officer, and director of MERCOLA.COM,
LLC, and MERCOLA.COM HEALTH
RESOURCES, LLC,

       Defendants.

Case No. **16C 4282**

**STIPULATION FOR
ENTRY OF PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF**

       Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint

for Permanent Injunction and Other Equitable Relief ("Complaint"), pursuant to Section 13(b) of

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), against Defendants

Mercola.com, LLC, a limited liability company; Mercola.com Health Resources, LLC, a limited

liability company; and Dr. Joseph Mercola, individually and as an owner, officer, and director of

Mercola.com, LLC, and Mercola.com Health Resources, LLC.  The Commission and Defendants

stipulate to entry of this proposed Stipulated Final Judgment and Order for Permanent Injunction

and other Equitable Relief to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, §§ 45(a) and 52, in the labeling, advertising, marketing, distribution, and sale of indoor tanning systems.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for the purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      The Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

6.      Entry of this Order is in the public interest.

## ORDER DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.      "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

2.      "Clearly and conspicuously" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication, even if the representation requiring the disclosure is made in only one means.

b.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

3

3.  "Close Proximity" means that the disclosure is very near the triggering representation. A disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

4.  "Corporate Defendants" means Mercola.com, LLC, and Mercola.com Health Resources, LLC, and their successors and assigns.

5.  "Defendants" means the Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination.

6.  "Device" means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is:

> (a) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them,
>
> (b) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
>
> (c) intended to affect the structure or any function of the body of man or other animals, and which does not achieve any of its principal intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

7.  "Endorsement" means, as defined in 16 C.F.R. § 255.0(b), any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical

to those of the sponsoring advertiser. The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group, or institution.

8.      "Including" means "including, without limitation."

9.      "Individual Defendant" means Dr. Joseph Mercola.

10.     "Indoor Tanning System" means any product or Device incorporating one or more lamps that generate ultraviolet radiation for human exposure.

11.     "Material connection" means any relationship that materially affects the weight or credibility of any endorsement and that would not reasonably be expected by consumers.

12.     "Reliably Reported," for a human clinical test or study ("test"), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

## I.

## BAN ON MARKETING OR SALE OF INDOOR TANNING SYSTEMS

**IT IS ORDERED** that Defendants are permanently restrained and enjoined from engaging or assisting others in the manufacturing, labeling, advertising, promotion, offering for sale, sale, distribution, or endorsing of any Indoor Tanning System.

## II.

## HEALTH-RELATED AND EFFICACY CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

Device, other than Indoor Tanning Systems, are permanently restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation about the safety, health benefits, performance, or efficacy of such Device, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates ("qualified experts"), when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by qualified experts; (2) that are generally accepted by qualified experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Device, when qualified experts would generally require such human clinical testing to substantiate that the representation is true. In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.

### III.

### PROHIBITED MISREPRESENTATIONS REGARDING TESTS OR STUDIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Device, other than Indoor Tanning Systems, are permanently restrained and enjoined from misrepresenting, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration:

    A.     The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; or

    B.     That the benefits of such Device are scientifically proven.

## IV.

## DISCLOSURE OF MATERIAL CONNECTIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Device, other than Indoor Tanning Systems, shall clearly and conspicuously disclose, for any Endorsement or review of such product, all material connections between the person providing the Endorsement or review and Defendants or any other person manufacturing, labeling, advertising, offering for sale, selling, or distributing such Device. The disclosure shall be in close proximity to the endorsement or review.

7

## V.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim for a Device covered by this Order, other than Indoor Tanning Systems, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including, but not necessarily limited to:

A.    All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.    All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.    Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.    All documents referring or relating to any statistical analysis of any test data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.    All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement shall not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any part or ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

*Provided further*, for any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## VI.

## MONETARY JUDGMENT AND CONSUMER REDRESS

**IT IS FURTHER ORDERED** that:

A.      JUDGMENT in the amount of Five Million, Three Hundred and Thirty-Four Thousand, and Sixty-Seven Dollars ($5,334,067) is entered in favor of the Commission against Individual Defendant and Corporate Defendants, jointly and severally, as equitable monetary relief.

B.      Defendants shall provide redress to purchasers of Indoor Tanning Systems in accordance with the provisions of Section VII, below.

C.      Upon compliance with Section VII, below, the remainder of the judgment is suspended, subject to the Subsections below.

D.      If, upon motion by the Commission, the Court finds that Defendants failed to fully comply with Section VII, the monetary judgment will be deemed unsatisfied and the entire judgment amount ($5,334,067) (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any amount previously paid by Defendants, shall immediately become due and payable by Defendants. Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance.

E.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

F.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

G.      Defendants are required, in accordance with 31 U.S.C. § 7701, to furnish to the Commission their respective Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## VII.

## REDRESS PROGRAM

**IT IS FURTHER ORDERED** that Defendants shall provide redress to eligible

purchasers of Indoor Tanning Systems in accordance with the provisions of this part:

A.      Within ten (10) days after entry of this Order, Defendants shall deliver to the Commission a Customer Database as described herein, in either Microsoft Excel, Microsoft Access, or Microsoft SQL format, providing records for all purchasers of Mercola brand Indoor Tanning Systems from January 1, 2012, through the date of entry of this Order, to the extent that such customers are known to Defendants through a diligent search of their records, including computer files, sales records, and invoices. Defendants shall identify the version and software programs used to create the Customer Database. The Customer Database shall be encrypted and forwarded using an overnight delivery service or the FTC's secured file transfer protocol. The Customer Database shall be formatted to include in separate fields the following: each customer's First Name, Middle Name, Last Name, Alias-Surname; and address recorded as Address 1, Address 2, City, State, Zip Code and Country; along with a total quantity of Mercola brand Indoor Tanning Systems purchased; the dates of the purchases and any refunds; the total amount of moneys paid less any amount credited for returns or refunds; and, if available, the customer's telephone number(s) and email address(es). The list shall include an identifying 1st row header column. In the absence of a 1st row header, any identifying codes along with the supporting code key is necessary. The Customer Database must be accompanied by a sworn affidavit attesting to its accuracy.

B.      The redress program shall be administered by a Redress Administrator selected by the FTC. The Defendants shall have no right to contest the FTC's selection of the Redress Administrator. The Consumer Database will be provided by the FTC to the Redress Administrator.

C.     The parameters of the refund program are as follows: Redress Eligibility Notices in the form set forth in Appendix A (subject to formatting and coding modifications appropriate to conducting the redress program), containing the Claim Form set forth in Appendix B (also subject to formatting and coding modifications appropriate to conducting the redress program), shall be issued to the purchasers in the Consumer Database by the Redress Administrator; Defendants have no right to challenge any aspect of the administration of the redress program. Purchasers in the Consumer Database who return signed Claim Forms within fifteen days after the time set forth on the Redress Eligibility Notice are Participating Purchasers who shall be paid a refund based on their payments for Indoor Tanning Systems.  If complete payments to Participating Purchasers plus the costs of administration for the redress program exceeds the Five Million, Three Hundred and Thirty-Four Thousand, and Sixty-Seven Dollars ($5,334,067) judgment set forth in Part VI, redress will be provided on a pro rata basis, after deducting the costs for the administration of the redress program.

D.     Defendants shall not engage in efforts to dissuade purchasers in the Consumer Database from participating in the refund program.

E.     The Defendants shall fund the redress program as follows:

1.     Within five (5) days after entry of this Order, Defendants, jointly and severally, shall pay to the FTC by electronic funds transfer the sum of One Million Dollars ($1,000,000), which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.  The FTC, or its Redress Administrator, shall pay this fund into a Redress Account to be used to pay redress to Participating Purchasers and the costs for administration of the redress program.  If, after the completion of the claims process in subsection C of this Section VII, the amount of

12

complete redress payments to Participating Purchasers plus the costs of administration for the redress program is less than the funds in the Redress Account, then any remaining funds shall be returned to the Defendants.

2.      In the event that funds in the Redress Account provided pursuant to subpart E(1) of this Section VII are insufficient to provide complete redress payments to Participating Purchasers pursuant to subsection C of this Section VI plus the costs of administration for the redress program, Defendants, jointly and severally, within ten (10) days of receiving notice from the FTC of the Redress Account deficiency, shall pay to the FTC by electronic funds transfer the funds necessary to cover the actual remaining costs of redress and administration, up to Four Million, Three Hundred and Thirty-Four Thousand, and Sixty-Seven Dollars ($4,334,067).

## VIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within seven days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For five years after entry of this Order, Individual Defendant for any business that he, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in

conduct related to the subject matter of the Order; and (3) any business entity
resulting from any change in structure as set forth in the Section titled
Compliance Reporting.  Delivery must occur within seven days of entry of this
Order for current personnel.  For all others, delivery must occur before they
assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this
Order, that Defendant must obtain, within thirty days, a signed and dated
acknowledgment of receipt of this Order.

## IX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the
Commission:

A.      Sixty days after entry of this Order, each Defendant must submit a compliance
report, sworn under penalty of perjury:

1.      Each Defendant must:  (a) identify the primary physical, postal, and email
address and telephone number, as designated points of contact, which
representatives of the Commission  may use to communicate with Defendant; (b)
identify all of that Defendant's businesses by all of their names, telephone
numbers, and physical, postal, email, and Internet addresses; (c) describe the
activities of each business, including the goods and services offered, the means of
advertising, marketing, and sales, and the involvement of any other Defendant
(which Individual Defendant must describe if he knows or should know due to his
own involvement); (d) describe in detail whether and how that Defendant is in

14

compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Individual Defendant must: (a) identify all of his telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all of his business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For ten years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen days of any change in the following:

1.      Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership

15

interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within fourteen days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. MERCOLA.COM, LLC.

## X.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for ten years after entry of the Order, and retain each such record for five years. Specifically, Corporate Defendants, and Individual Defendant for any business that he, individually or collectively with

Case: 1:16-cv-04282 Document #: 5-1 Filed: 04/14/16 Page 17 of 22 PageID #:73

any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.   Accounting records showing the revenues from all goods or services sold;

B.   Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.   Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.   A copy of each unique advertisement or other marketing material.

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order:

A.   Within fourteen days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.


SO ORDERED this *17th* day of *April* , 2016.

_____
UNITED STATES DISTRICT JUDGE


SO STIPULATED AND AGREED:

                                      FOR PLAINTIFF FEDERAL TRADE
                                      COMMISSION:

                                      DAVID C. SHONKA
                                      Acting General Counsel
                                      Attorneys for Plaintiff
                                      Federal Trade Commission
                                      600 Pennsylvania Avenue, NW
                                      H-568
                                      Washington, D.C. 20580
                                      (202) 326-2868 (voice)


                                    /s/
              _____ Date: __4.14.16__
                                    Janet M. Evans
                                    JANET M. EVANS
                                    Federal Trade Commission
                                    600 Pennsylvania Ave, NW
                                    CC-10528
                                    Washington, D.C. 20580
                                    (202) 326-2125 (voice)
                                    Email: jevans@ftc.gov

                                  GUY G. WARD
                                    Federal Trade Commission,
                                    55 W. Monroe Street, Suite 1825
                                    Chicago, Illinois 60603
                                    Phone: (312) 960-5612
                                    Fax: (312) 960-5600
                                    Email: gward@ftc.gov

FOR DEFENDANTS MERCOLA.COM, LLC,
MERCOLA.COM HEALTH RESOURCES, LLC

_____ Date: 2-9-16
Dr. Joseph Mercola, owner, officer, and director of
Mercola.com, LLC and Mercola.com Health
Resources, LLC


FOR DEFENDANT DR. JOSEPH MERCOLA:

_____ Date: 2-9-16
Dr. Joseph Mercola


ATTORNEYS FOR DEFENDANTS:

_____ Date: 2-9-16
Todd A. Harrison, Esq.

TODD A. HARRISON, ESQ.
LEONARD L. GORDON
Venable LLP
575 7th Street, NW,
Washington, DC 20004
202.344.4724 (Harrison voice)
TAHarrison@Venable.com

APPENDIX A

## IMPORTANT REFUND INFORMATION

[FTC logo]

**FTC v. Mercola.com, LLC and Others**
Claims Administration Center
[address]
Bar Code with information regarding Claims Administer Center

[date]

Sample A Sample
Address 1
Address 2
«City» «State» «Zip»

Dear [Customer]:

We're writing because you may be eligible for a refund for an indoor tanning system you bought from Mercola.com. The Federal Trade Commission (FTC), the nation's consumer protection agency, sued Mercola.com and others for deceptive advertising. According to the FTC, Mercola.com made false and unsupported claims that their indoor tanning systems are safe and don't increase the risk of skin cancer, including melanoma; and can reduce wrinkles.

To settle the case, Mercola.com has agreed to pay refunds to consumers who aren't satisfied with the product. **To apply for a refund, fill out the enclosed Claim Form, sign it, and return it to the address above by [add date certain].** The amount of your refund will depend on the price you paid for the indoor tanning system and the number of consumers who request a refund.

The FTC never requires you to pay upfront fees to cash a refund check. If someone contacts you about a refund and insists on money – or asks for your Social Security number, bank account or credit card number, or other sensitive information – it's probably a scam.

If you have questions, please contact the Claims Administration Center at 1-877-690-7102. If the person who received this notice is deceased, please call 1-877-690-7102.

For more information about the FTC's case, visit www.ftc.gov/refunds. Click the Recent FTC Cases Resulting in Refunds link at the bottom.

Sincerely,

Claims Administration Center

**APPENDIX B**

[FTC logo]

**Claims Administrator**
**FTC v. Mercola.com, LLC and Others**
**[address]**

**Complete and Sign this**
**Form and Return No Later Than**
**[date]**

Sample A Sample
Address 1
Address 2
«City» «State» «Zip»

If the address we have for you is incorrect, please add
the correct address below
Name
Address 1
Address 2
«City» «State» «Zip»
«City» «State» «Zip»

I bought a Mercola brand indoor tanning system and I'm not satisfied with the product. Please send me a refund in connection with the Federal Trade Commission's settlement with Mercola.com.

[blocks for inserting area code and phone number]

_____        _____
Signature                                                  Date

_____
Print Name

PRIVACY ACT NOTICE

Section 5 of the Federal Trade Commission Act permits us to collect this information so that we can process your refund request. Your response is voluntary, but we cannot send you a refund without it. To process your request, we may share your information with court receivers, FTC contractors, auditors, or other government agencies. We may share your information for other reasons, as permitted by the Privacy Act of 1974. A complete list of routine uses is available in our Nonpublic Investigational and Other Nonpublic Legal Program Records, which you can find at http://www.ftc.gov/about-ftc/foia/foia-reading-rooms/privacy-act-systems